# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**SCOTT A. TANNER**
Tanner Law Group
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
PEARL GASPER TRUST:

**STEPHEN R. BUSCHMANN**
Thrasher Buschmann & Voelkel, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
BRUCE F. WALLER:

**WILLIAM GOODEN**
Clark, Quinn, Moses, Scott & Grahn, LLP
Indianapolis, Indiana

**FILED**
Mar 11 2013, 9:57 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| BAY COLONY CIVIC CORPORATION, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 49A05-1207-PL-365 |
| | ) |
| PEARL GASPER TRUST and BRUCE F. WALLER, | ) |
| | ) |
| Appellees-Plaintiffs. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Thomas J. Carroll, Judge
Cause No. 49D06-1007-PL-31654

**March 11, 2013**

**OPINION - FOR PUBLICATION**

**SHEPARD, Senior Judge**

Two homeowners in a planned subdivision on a reservoir have been seeking to prevent their neighbors from using an easement for access to the reservoir.

The two homeowners own private boat docks, and they sued when the neighborhood association spent funds to create a path down through the easement to the water so that other residents could use the reservoir without encroaching on the docks. Concluding the trial court erred by entering judgment in favor of the two homeowners, we reverse.

FACTS AND PROCEDURAL HISTORY

Bay Colony is a residential development situated next to Eagle Creek Reservoir in Marion County, Indiana. Broadly put, the neighborhood is arranged as follows. The City of Indianapolis owns the land immediately at water's edge, all the way around the reservoir. About half of the homeowners in Bay Colony own "waterfront lots" that face the reservoir, just behind the City's strip. The other half of the homeowners, farther away from the water, have an easement that they contend gives them access to the reservoir.

The plaintiffs in this litigation, Pearl Gasper Trust and Bruce Waller, are waterfront owners of Lots 12 and 14. According to Bay Colony's covenants, Lots 12 and 13 are burdened by an easement:

> In addition, Lots 12 and 13 are hereby subjected to a "lake front access easement" as shown on the plat which easement is established as an area over, through, and across which the owners in this subdivision, their tenants and invitees shall have access to public land adjoining Eagle Creek Lake.

Appellant's App. p. 97. The easement runs southward from a neighborhood street, through the east edge of Lot 13 and the west edge of Lot 12 to the public land at water's edge.

Pearl Gasper Trust owns Lot 12. Pearl Gasper is its trustee, and she lives on Lot 12. Bruce Waller owns and lives on Lot 14. Gasper and Waller have boat docks unattached to their lots that were constructed on the shore by previous owners.

When other Bay Colony residents began using the docks without permission, Gasper and Waller erected signs declaring the docks private property. Waller installed a locked wooden gate to his dock. Gasper installed a chain-link gate to her dock as well as a chain-link fence preventing anyone from walking around her gate to get to the water.

Gasper and Waller exchanged several communications with their nonprofit neighborhood association, Bay Colony Civic Corporation ("the Association"), about the trespass on their docks and the Association's wish to build a community dock in the area.

On July 14, 2010, the Association did some landscape work to make it safer and easier for Bay Colony residents to reach the water without using plaintiffs' docks. It cleared brush from the easement to some washouts located east of the docks, filled the washouts with riprap, and put down mulch on the footpath of the easement and on the extension of the footpath to the riprap. In the process, it removed Gasper's chain-link gate and fence. The Association spent $1732 to complete the work.

Gasper and Waller thereafter sued the Association, seeking injunctions to prevent the Association from entering the plaintiffs' lots, altering or removing their docks, or

3

blocking Gasper's access to her dock. The complaint also requested damages for, among other things, the Association's alleged impermissible use of funds.

The trial court later granted the plaintiffs' motion to join the City as a defendant. The City filed a statement of its position in September 2011, declaring that it had "no concrete interest in the dispute." *Id.* at 43. It also noted, "Based on the plain meaning of [the covenant creating the easement], it appears that owners of property in Bay Colony, their tenants, and invitees have the right to use the lake front access easement on Lots 12 and 13 of Bay Colony to get to the public land adjoining the Reservoir, and then to access the waters of the Reservoir from the public land." *Id.* The same day, the City filed a motion to dismiss, but the court apparently never ruled on the motion.

The plaintiffs and the Association each moved for partial summary judgment. After a hearing, the court issued an order determining that the easement granted Bay Colony residents access to the public land surrounding the reservoir but not to the reservoir itself. It thus permanently enjoined Bay Colony residents who were not waterfront lot owners from using the easement to access the water.

The court further determined that the Association violated its bylaws by spending funds on public land (namely, clearing the path through the easement and across the public frontage to the reservoir). It also held that the Association violated City regulations by failing to obtain City approval to make changes on the City's strip. It thus ordered the Association to restore the land to its original condition and otherwise permanently enjoined the Association from spending funds on the public land.

The Association now appeals.

4

ISSUES

The Association raises two issues: (1) whether the trial court erred by barring all but waterfront owners from using the easement to access the water, and (2) whether the trial court erred by ordering the Association to restore the City's strip to its original condition and by otherwise barring it from using funds on the public land.

DISCUSSION AND DECISION

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269-70 (Ind. 2009). All facts established by the designated evidence and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind. 2007). We consider these principles on the same grounds as a trial court, with the appealing party bearing the duty of persuasion.

I. THE EASEMENT

The Association first contends the trial court erred by barring half of Bay Colony from using the easement to access the water. Easements are limited to the purpose for which they are granted. *Drees Co. v. Thompson*, 868 N.E.2d 32, 38 (Ind. Ct. App. 2007), *trans. denied*. In construing an instrument granting an easement, a court must ascertain and give effect to the intention of the parties, which is determined by proper construction of the language of the instrument from an examination of all its parts. *Id.*

5

The Association says the very purpose of the easement is to give Bay Colony residents a way to reach the water. Gasper and Waller say the easement only grants residents access to the public land surrounding the reservoir but not to the water itself.

The covenant provides for a "lake front access easement" that is shown on the plat and "is established as an area over, through, and across which the owners in this subdivision, their tenants and invitees shall have access to public land adjoining Eagle Creek Lake." Appellant's App. p. 97.

The plat does show that the easement ends at the public land fronting the reservoir. *See id.* at 10. And, the language of the covenant explicitly says the easement gives residents access to the public land. Gasper and Waller are thus correct to say that the easement grants residents only a way to reach the public land. This conclusion is altogether unsurprising; the strip of land around the reservoir at water's edge is owned by the City, and thus Bay Colony could not grant any property rights as to that land.

On the other hand, surely the reason for the easement was not merely to give residents a way to reach the edge of Bay Colony's grounds so that they could gaze upon the shore and the water. We thus conclude that the Association is correct that the easement was intended to give the residents a way to reach the reservoir. The City's declared position before the trial court was to the same effect. Indeed, the City explicitly declared that it had no objection to the residents' reasonable use of the public land to access the reservoir so long as the placement of any docks or other structures was approved by the City. *Id.* at 45. This posture appears consistent with the City's own regulations and with the design of the covenant.

6

Gasper and Waller nonetheless argue that the Association improperly cites the City's position statement and that the City is bound by the court's order prohibiting residents from using the easement to access the water. We are hard-pressed to embrace this view. The City's statement was among the Association's designations on summary judgment, and it is uncontradicted evidence that the City has taken no issue with the residents' use of the public land to reach the reservoir.

We therefore conclude that the easement grants the residents access to the public land and that the trial court erred by barring residents from using the easement to access the water.

## II. THE ASSOCIATION'S FUNDS

The Association next contends the trial court erred by ordering it to restore to its original condition the public land across which it created a path and by otherwise barring it from using funds on the City's strip. The court based these orders on its determination that the Association violated its bylaws and City regulations.

The articles of incorporation and bylaws of a nonprofit corporation constitute a contract between the corporation and its members. *Heritage Lake Prop. Owners Ass'n v. York*, 859 N.E.2d 763, 765 (Ind. Ct. App. 2007). Issues involving construction of such contracts are matters of law for the appellate court to decide. *Id.*

The Association's articles of incorporation state its general purpose: "[T]o provide the health, safety and welfare of the residents of the area known as Bay Colony." Appellant's App. p. 104. Its bylaws say that the annual fees paid by its members are to be used for:

7

(a) defending, opposing or resisting any zoning, rezoning, land use variance, annexation, tax assessment or other proposition adversely affecting, or offensive to members of Bay Colony; (b) advocating, sponsoring, or advancing any proposal, cause or proposition advantageous to members; (c) performing maintenance of roads and common grounds within Bay Colony, land [sic] (d) enforcing the Restrictive Covenants of Bay Colony.

*Id.* at 107.

Gasper and Waller focus only on the bylaw provision authorizing funds to perform maintenance of roads and common grounds within Bay Colony. They argue that because mulch and riprap were placed on public lands, and public lands are not "common grounds within Bay Colony," the Association violated its bylaws.

General rules of contract interpretation, however, direct us to read articles of incorporation and bylaws together so as to give effect to all words, phrases, and terms. *See Heritage*, 859 N.E.2d at 765.

While the bylaws authorize funds for specific work within Bay Colony, none of its provisions actually prohibit funds for work outside the subdivision's property lines. Moreover, as the point of the Association's easement is to give residents a way to reach the water, clearing brush, mulching a path, and installing riprap on the washouts gives residents a safer way to do so without encroaching on Gasper's and Waller's docks. These expenditures therefore fell within the Association's purpose as outlined in the articles of incorporation to provide for the residents' health, safety, and welfare as well as the bylaw provision allowing the Association to advance any cause advantageous to its members. We find no violation of the Association's bylaws.

8

As to City regulations, it appears that the Association may have been required to obtain a permit to create the path across the City's land. The Association admits that it did not do so. Still, none of the designated evidence shows that the City has ever imposed any penalty for doing the work without approval or sought restoration of the land to its original condition. Quite the contrary is true. The City takes no offense at such a benign activity as a footpath to the reservoir. As the City's position seems consonant with its regulations and the existing easement, there are little grounds for judicial action prompted by the private interests of the two dissenting homeowners.

We therefore conclude that the trial court erred by ordering the Association to undo the path leading down to the shore and otherwise barring it from using funds on improving access to the reservoir for its members.

### CONCLUSION

We reverse the trial court's judgment and remand with directions to grant the Association's motion for partial summary judgment.

RILEY, J., and MATHIAS, J., concur.