ATTORNEYS FOR APPELLANT
George M. Plews
Brett E. Nelson
Jonathan P. Emenhiser
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Mary K. Reeder
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

Richard A. Rocap
Rocap Witchger LLP
Indianapolis, Indiana

Jeffrey C. Gerish
Kenneth C. Newa
David A. Dworetsky
Plunkett & Cooney, P.C.
Bloomfield Hills, Michigan

ATTORNEYS FOR AMICI CURIAE

COMPLEX INS. CLAIMS LITIG. ASS'N
Philip B. McKiernan
Joseph M. Hendel
Steven W. Krohne
Indianapolis, Indiana

INSURANCE INSTITUTE OF INDIANA
Karl L. Mulvaney
Barry C. Cope
Barbara A. Jones
Indianapolis, Indiana

NAT'L SOLID WASTES MGMT ASSOC.
AND IND. PETROL. MARKETERS ASSOC.
Charles P. Edwards
John P. Fischer
Christian P. Jones
Indianapolis, Indiana

# In the
# Indiana Supreme Court
_____

No. 49S02-0805-CV-244

DREADED, INC.,                                                        *Appellant (Plaintiff),*

v.

ST. PAUL GUARDIAN INSURANCE CO.,
ST. PAUL PROTECTIVE INSURANCE CO., AND
ST. PAUL FIRE AND MARINE INSURANCE CO.,          *Appellees (Defendants).*

_____

Appeal from the Marion Superior Court, No. 49D10-0503-PL-011747
The Honorable David Dreyer, Judge
_____

On Transfer from the Indiana Court of Appeals, No. 49A02-0701-CV-78
_____

**April 28, 2009**

**Dickson, Justice**.

Facing an environmental damage claim, the appellant, Dreaded, Inc., waited over three

years to notify its insurer, the defendants-appellees (collectively referred to as "St. Paul"), and now seeks reimbursement for defense costs and expenses incurred during the pre-notice period. We affirm the trial court's grant of St. Paul's motion for summary judgment and hold that, as to claims seeking recoupment of an insured's pre-notice defense costs predicated on an alleged breach of an insurer's duty to defend, the insurer's duty to defend did not arise and prejudice is an irrelevant consideration.

The facts are relatively straightforward. On November 17, 2000, Dreaded received a letter from the Indiana Department of Environmental Management ("IDEM") demanding that it investigate possible soil contamination at a former business site and warning of potential enforcement actions and civil penalties. In response, Dreaded hired an attorney to defend it against the claim and hired an environmental contractor to investigate. The contractor's investigation resulted in two reports, one in mid-2001 and another in late-2002, both of which were forwarded to IDEM. In August of 2003 IDEM replied by a second letter ordering Dreaded to conduct further investigation and to provide a full delineation of the contamination. In March of 2004, three and one-half years after the first IDEM claim letter, Dreaded, which was covered under several commercial general liability insurance policies issued by St. Paul, notified St. Paul of the IDEM claim and requested that St. Paul take up its defense in the IDEM claim and reimburse Dreaded for defense costs incurred to that point. St. Paul responded in May 2004, agreeing that the IDEM claim fell within the policies' provision obligating St. Paul to defend Dreaded from that point forward, but expressly reserving its rights and refusing to reimburse Dreaded for defense costs incurred prior to the March 2004 notice and tender. Dreaded filed suit. Its complaint was in two counts, the first seeking declaratory relief "establishing [St. Paul's] duty to fully defend and indemnify Dreaded against the IDEM Action." Appellant's App'x at 23. In the second count, Dreaded seeks damages for St. Paul's breach of its obligations under the policies requiring St. Paul "to defend Dreaded against the IDEM Action and to indemnify it for all sums that it has incurred and will incur up to policy limits." *Id.* St. Paul defended by claiming that the insurance policy provisions requiring prompt notice and disclaiming liability for financial obligations incurred or payments made without St. Paul's consent precluded St. Paul's duty to defend prior to receiving notice and Dreaded's claim for pre-notice expenses.

Both parties sought summary judgment. The trial court denied Dreaded's motion and granted St. Paul's, concluding in part that: "[a] policyholder has a duty to tender claims in order to trigger an insurer's duty to defend under a general liability policy"; "[a] showing of prejudice is not required in the present case"; and "[e]ven if a showing of prejudice was required in this case, this Court finds that Dreaded's delay of nearly three and one-half years in tendering the [u]nderlying IDEM claim to St. Paul is unreasonable as a matter of law, and gives rise to a presumption of prejudice in St. Paul's favor." *Id.* at 15-16.

The Court of Appeals reversed, concluding that Dreaded's delay in notifying St. Paul of the IDEM claim was unreasonable; that prejudice must be shown by St. Paul, but would be presumed due to the unreasonably late notice; and that the presumption is rebuttable and Dreaded "has designated sufficient evidence to raise a genuine issue of material fact as to whether St. Paul was prejudiced as a result of the delayed notice." Dreaded, Inc. v. St. Paul Guardian Ins. Co., 878 N.E.2d 467, 474 (Ind. Ct. App. 2007). We granted transfer.

In this appeal, Dreaded is challenging the trial court's grant of St. Paul's motion for summary judgment. When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Shambaugh & Son, Inc. v. Carlisle, 763 N.E.2d 459, 461 (Ind. 2002). Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); Freidline v. Shelby Ins. Co., 774 N.E.2d 37, 39 (Ind. 2002); Shell Oil Co. v. Lovold Co., 705 N.E.2d 981. 983-84 (Ind. 1998). In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. N. Ind. Pub. Serv. Co. v. Bloom, 847 N.E.2d 175, 180 (Ind. 2006). The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact. Mullin v. Mun. City of South Bend, 639 N.E.2d 278, 281 (Ind. 1994).

Dreaded presents the following principal issues on appeal: (1) neither the St. Paul policies nor Indiana law contain a "tender" requirement that excludes coverage for defense costs incurred prior to the insured's giving notice to the insurer; (2) Dreaded is entitled to recover its pre-notice defense costs unless St. Paul can prove that it was prejudiced by Dreaded's late notice; and (3) St. Paul failed to present specific evidence of actual prejudice.  St. Paul, in contrast, asserts that it had no duty to defend Dreaded against the IDEM claim until Dreaded first complied with the notice provision.  It is undisputed that this compliance did not occur until more than three years after Dreaded was first notified of the IDEM claim and that, upon receiving the notice, St. Paul assumed the defense of Dreaded as to this claim.  St. Paul emphasizes that it is "*not seeking to avoid all obligations under the policies*."  Br. of Appellees at 15 (italics in original).

The insuring agreement in the comprehensive general liability policy contract provides in relevant part that St. Paul has "the right and duty to defend any protected person against a claim or suit for injury or damage covered by this agreement," but that it does not "have a duty to perform any other act or service."  Appellant's App'x at 76.  Relevant to Dreaded's claim for indemnification defense costs incurred prior to notice, the following policy language is germane:

> **Additional payments**.  We'll have the duty to make only the additional payments shown below in connection with any claim or suit under this agreement against a protected person when we:
> • investigate or settle the claim or suit; or
> • defend the protected person against the claim or suit.
> *   *   *
> *Expenses incurred by protected persons*.
> We'll pay all reasonable expenses that any protected person incurs at our request while helping us investigate or settle, or defend a protected person against, a claim or suit. . . .

*Id.* at 77 (emphasis by underscore added).

St. Paul alleges that it has no obligation to pay for pre-notice expenses incurred by Dreaded because of the notice provision and the voluntary payment provision located in a section of the St. Paul policies that prescribes the insured's obligations in the event of loss.  This section is prefaced with the following introduction:

> You or other protected persons are required to perform the duties described below when a property loss that may be covered under this policy happens or an accident or incident happens that could result in liability damages covered under this policy.  Failure to comply could affect coverage.  The insuring agreements contained in this policy

4

determine what is covered. As a result, you should read them carefully to understand the extent of the coverage provided.

*Id.* at 330. The specific notice and voluntary payment conditions at issue in this case provide in relevant part as follows:

> **When This Policy Provides Liability Protection**
> If an accident or incident happens that may involve liability protection provided in this policy, you or any other protected person involved must:
> \* \* \*
> 2. Tell us or our agent what happened as soon as possible. Do this even though no demand for damages has been made against you or any other protected person, but you or another person is aware of having done something that may later result in a demand for damages. The notice should include all of the following:
> • The time and place of the accident or incident;
> • The protected person involved;
> • The specific nature of the accident or incident including the type or demand for damages that may result; and
> • The names and addresses of any witnesses and injured people.
> \* \* \*
> 5. Not assume any financial obligation or pay out any money without our consent. But this rule doesn't apply to first aid given to others at the time of an accident.

*Id.* at 236. The language of these conditions requiring prompt notice and prohibiting the assumption of financial obligation is clear and unambiguous and thus must be given its plain and ordinary meaning. Morris v. Econ. Fire and Cas. Co., 848 N.E.2d 663, 666 (Ind. 2006).

Dreaded contends that the trial court erred and argues that there is no obligation to tender claims in order to trigger an insurer's duty to defend under the commercial general liability policy. Treating the notice and voluntary payment clauses asserted by St. Paul as "coverage defenses – late-notice and non-cooperation,"[1] Dreaded argues that for an insurer to avoid liability

---

[1] Dreaded incorrectly characterizes the notice provision as a coverage defense. It is not in the nature of a coverage exclusion, but rather functions as a condition precedent, delineating action that must be taken by Dreaded as a prerequisite to trigger St. Paul's obligations. *See* Miller v. Dilts, 463 N.E.2d 257, 266 (Ind. 1984) (notice "'is a threshold requirement which must be met before an insurer is even aware that a controversy or matters exists'" (quoting Ind. Ins. Co. v. Williams, 448 N.E.2d 1123, 1138 (Ind. Ct. App. 1983) (Hoffman, J., dissenting), *trans. granted*)); Askren Hub States Pest Control Servs. v. Zurich Ins. Co., 721 N.E.2d 270, 277 (Ind. Ct. App. 1999) (notice is "material," "of the essence of the contract," "a condition precedent to the company's liability to its insured").

using these defenses, the insurer must have suffered prejudice, which may be presumed from an unreasonable delay as to the notice clause, but requires actual prejudice shown as to the non-cooperation clause. Br. of Appellant at 10. Dreaded thus challenges the trial court's grant of summary judgment for St. Paul because it contends that prejudice is a relevant consideration and that there existed genuine issues of fact regarding actual prejudice.

Governing Indiana case law is inconclusive regarding the necessity and function of prejudice in evaluating an insurer's alleged failure to perform when its insured fails to comply with a policy notice requirement. In Miller v. Dilts, 463 N.E.2d 257 (Ind. 1984), this Court distinguished insurance policy provisions requiring an insured to give notice to the insurer from provisions requiring the insured to cooperate with the insurer's investigation and defense of a claim, holding that an insurer "must show actual prejudice from an insured's noncompliance with the policy's cooperation clause before it can avoid liability under the policy." *Id.* at 261. But where there is a violation of a notice provision, which is a "threshold requirement" for coverage, Miller opined that prejudice will "be presumed from an unreasonable delay in notifying the company." *Id.* at 265. In contrast, however, this Court briefly revisited the issue in Morris v. Economy Fire and Casualty Co., again noting that "disputes regarding alleged breaches of an insured's duty under a separate 'cooperation clause' may necessitate consideration of resulting prejudiced to the insurance company." 848 N.E.2d at 666. But unlike cooperation clause violations, and in significant contrast to the "presumed prejudice" rationale espoused in Miller, we summarily declared that "prejudice is not a necessary consideration in determining the enforceability of other insurance policy provisions," but did not express explicit disapproval of Miller's presumption of prejudice formulation. *Id.*

A significant variation is found in decisions from other jurisdictions that have considered the issue. *See* Charles C. Marvel, Annotation, *Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers*, 32 A.L.R.4th 141 §2 (1984, supp. 2008). This annotation identifies a "substantial number" of cases that "support a traditional proposition" holding that prejudice is irrelevant to an insurer's right to avoid its duty to defend in the event of its insured's unreasonable and unexcused omission or delay in complying with the

policy's notice requirements. *Id*. at §2, 144-45, §3(a), 146-52. But the same "substantial number" description is also used to identify jurisdictions that require an insured to show that it was prejudiced by the insured's failure of notice. *Id*. at §5(a), 157-67. Citing <u>Miller</u>, the annotation lists Indiana among those "few jurisdictions" that employ a presumption of prejudice analysis. *Id.* at §3(b), 152, Supp. at 25. Our recent <u>Morris</u> opinion is not referenced.

Appraising the distribution of views differently, Dean Holmes believes that only in a decreasing minority of jurisdictions is the insurer not required to show that it was prejudiced by an insured's lack of compliance with the policy notice requirement. Eric Mills Holmes, 22 HOLMES' APPLEMAN ON INSURANCE 2D §139.4, 316 (2003). He explains that under this "*no-prejudice rule*," compliance with the notice requirements are conditions precedent to an insurer's coverage obligations, and thus defective notice eliminates the insurer's obligation, even if the insurer was not prejudiced by the untimely or defective notice. *Id.* at §139.4[A], 316. In contrast, Holmes believes that "the overwhelming majority of states" follow a "*prejudice rule*" in which an insurer must demonstrate actual prejudice from a failure of proper notice. *Id.* at §139.4[C], 321. He also acknowledges that a "number of jurisdictions" address the issue by creating a rebuttable presumption of prejudice in favor of the insurer. *Id.* at §139[C][b], 328. Noting only <u>Miller</u> and not <u>Morris</u>, he places Indiana in this category.

The facts of the present case, however, compel the same outcome regardless of which approach is followed. It is important to first recognize what this case is *not* about. Dreaded is not seeking reimbursement for defense costs it incurred because St. Paul refused to defend after receiving notice of the IDEM claim. *See, e.g.*, <u>Walton v. First Am. Title Ins. Co.</u>, 844 N.E.2d 143, 146-49 (Ind. Ct. App. 2006), *trans. denied*. Dreaded is not seeking indemnity for a damages judgment entered against it because St. Paul failed to defend after notice. *See, e.g.*, <u>Stevenson v. Hamilton Mut. Ins. Co.</u>, 672 N.E.2d 467 (Ind. Ct. App. 1996), *trans. denied*. Dreaded does not here contend that it provided a timely notice of claim that, while defective in some respect, nevertheless substantially complied with the policy requirements or that its failure to give notice is legally excused. *See, e.g.*, <u>Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.</u>, 259 F.3d 792, 796 (7th Cir. 2001). Nor is this case about whether St. Paul had sufficient constructive notice from other sources to trigger its duty to defend notwithstanding a

7

lack of notice directly from Dreaded. *See, e.g.*, <u>Frankenmuth Mut. Ins. Co. v. Williams</u>, 645 N.E.2d 605 (Ind. 1995); <u>Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.</u>, 433 F. Supp. 2d 933, 951-52 (N.D. Ind. 2005) (collecting cases); <u>Brandon v. Nationwide Mut. Ins. Co.</u>, 769 N.E.2d 810 (N.Y. 2002). Today's case differs from those in which an insurer seeks to completely disclaim its policy obligations on grounds that the insured didn't report the claim to the insurer within the time constraints in the policy's notice provision—here, e.g., "as soon as possible." Appellant's App'x at 236. St. Paul is not claiming late notice as an excuse to avoid its prospective obligations after receiving notice. *See, e.g.*, <u>Miller</u>, 463 N.E.2d at 259-60. Dreaded's claim for damages is predicated solely on its contention that St. Paul breached the "duty to defend a protected person against a claim or suit for injury or damage covered by this agreement." Appellant's App'x at 76.

But an insurer cannot defend a claim of which it has no knowledge. The function of a notice requirement is to supply basic information to permit an insurer to defend a claim. The insurer's duty to defend simply does not arise until it receives the foundational information designated in the notice requirement. Until an insurer receives such enabling information, it cannot be held accountable for breaching this duty.

Dreaded's complete failure to comply with the notice requirement is undisputed. For more than three years, Dreaded was aware of IDEM's environmental claim against it and failed to inform St. Paul. Yet Dreaded now asserts that St. Paul breached its policy obligation to defend Dreaded during the time St. Paul knew nothing about the claim. Under the facts of this case, prejudice is irrelevant. The issue is simply whether the insurer had any duty to defend at all. St. Paul's duty to defend did not arise until Dreaded complied with the policy's notice requirement. St. Paul is entitled to summary judgment as a matter of law.

Dreaded does not prevail in any of its appellate claims. St. Paul was under no duty to defend the IDEM claim in the absence of any knowledge of the claim, and St Paul did not need to present any separate proof of prejudice to justify its failure to defend during the pre-notice period. We affirm the trial court's grant of summary judgment in favor of St. Paul.

8

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.